645 F.2d 484
 MARINE CONCRETE and U. S. Fidelity and Guaranty Company, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Respondents,
Richard Ladner, Claimant-Respondent.
 No. 80-3882
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit A
 May 20, 1981.
 Richard P. Salloum, Gulfport, Miss., for petitioners.
 Catherine A. Giacona, Washington, D. C., for U. S. Dept. of Labor.
 Gerald R. Emil, David A. Wheeler, Gulfport, Miss., for respondent Ladner.
 Petition for Review of an Order of the Benefits Review Board.
 Before GEE, RUBIN and RANDALL, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 The question before us is a narrow one: may an administrative law judge (ALJ) approve the settlement of a claim under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., that involves possible future medical benefits? Bound by a precise statute, we conclude that Congress has ordained that only the Secretary of Labor or his designate may approve such a settlement, and we, therefore affirm the decision of the Benefits Review Board (BRB).
 
 
 2
 Even thin rules may reflect onto other areas. To avoid implications that might be drawn if we wrote in broad terms, we confine our decision to the issue before us. It is purely a matter of statutory construction, for the facts are not disputed.
 
 
 3
 Richard Ladner is thirty-one years old. He has ten years of schooling. On July 13, 1977, he was working for Marine Concrete as a night watchman. He alleges that during the course of his duty he jumped from a barge to a lugger and suffered an injury to his back that later required kidney surgery. He filed a claim under the LHWCA. The case was assigned to an ALJ for hearing. Ladner was represented by counsel.
 
 
 4
 The employer was prepared to present the testimony of a fellow employee who had worked with Ladner on the night when Ladner was allegedly injured. He would have testified that he never saw Ladner fall and that Ladner made no complaint to him regarding such a mishap. Marine Concrete was also prepared to present testimony that Ladner had a criminal record and was on parole at the time. Ladner's parole officer was ready to testify that, after the alleged injury, Ladner had done heavy work. Ladner's landlady-neighbor was prepared to testify that he was able to perform full physical activity subsequent to the date on which he claimed he had fallen. The employer elicited Ladner's admission that he had made claims against former employers for a similar condition. Examining physicians had expressed the opinion in medical reports that he was able fully to perform the duties of his former occupation and had suffered no permanent disability, even partial.
 
 
 5
 Confronted with the array of evidence against his client, Ladner's counsel, with Ladner's approval, agreed to a settlement of his claim for payment of $2500 plus compensation benefits of $1328.82 in addition to $1635 in medical expenses incurred, $736.55 in medical benefits previously paid and $1000 in attorney's fees. The settlement included a release of all future claims for medical benefits. Ladner stated that he was satisfied with the agreement. His lawyer concurred. Ladner and his employer presented a petition to approve their compromise.
 
 
 6
 After making a thorough inquiry into the facts, the ALJ found that the medical evidence did not establish a causal connection between any July 1977 injury and Ladner's kidney problems and that there was no objective medical evidence that the employee-claimant suffered any residual back impairment. He also found that it was doubtful that the accident related by Ladner actually occurred. He said he was "convinced" that the settlement proposal was in Ladner's best interest. However, he thought he had no authority to approve it and, therefore, denied the petition. He did not make any determination of the merits of the claim. Ladner and his employer appealed, but the BRB, with one dissent, affirmed. Ladner and his employer now petition this court to set aside the BRB's order. See 33 U.S.C. § 921(c).
 
 
 7
 The LHWCA permits the settlement of claims under the Act in certain circumstances. The statute deals with the settlement of claims involving compensation payments and medical payments in separate subsections. Section 8(i)(A) of the LHWCA, 33 U.S.C. § 908(i)(A), which we will now refer to only as Subsection A, permits the deputy commissioner to approve agreed settlements discharging the liability of the employer for compensation. Section 19(d) of the Act provides that, in hearings held under the LWHCA, "(a)ll powers, duties, and responsibilities vested ... in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges." 33 U.S.C. § 919(d). The BRB has held that an ALJ, therefore, has authority to approve settlements that release the employer from liability for future compensation. Clefstad v. Perini North River Associates, (1978) BRBS 217 (MB).[1]
 
 
 8
 Subsection A does not mention settlements that provide for discharge of liability for medical benefits. Subsection B, Section 8(i)(B) of the Act, 33 U.S.C. § 908(i)(B), expressly addresses the approval of settlements of claims for medical benefits. It provides:
 
 
 9
 Whenever the Secretary determines that it is for the best interests of the injured employee entitled to medical benefits, he may approve agreed settlements of the interested parties, discharging the liability of the employer for such medical benefits....
 
 
 10
 HWCA Section 8(i)(B), 33 U.S.C. § 908(i)(B) (emphasis added).
 
 
 11
 Thus, the statute by its terms permits the deputy commissioner to approve settlements discharging liability for compensation benefits while approval of compromise agreements involving medical benefits is expressly reserved to the Secretary. The difference was not inadvertent. Before 1972, settlement of liability for compensation benefits required the approval of the Secretary. See S.H. Du Puy v. Director, Office of Workers' Compensation Programs, 519 F.2d 536, 538 (7th Cir. 1975), cert. denied, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976) (neither the deputy commissioner nor the ALJ is authorized to approve settlement of a death claim under the LHWCA). The Act contained no provision for compromise of liability for medical benefits. In 1972, Subsection A was amended to give the deputy commissioner authority to approve compensation benefits compromises. Subsection B was added to permit settlement of medical benefits, but, as we have noted, it does not in terms extend this authority to the deputy commissioner, nor does Section 19(d) of the Act, dealing with ALJs, extend such authority to them.[2]
 
 
 12
 The Secretary is given authority to promulgate regulations for purposes of administering the Act, LHWCA Section 39(a), 33 U.S.C. § 939(a), and may designate someone to act for him, see 20 C.F.R. § 701.301(a)(2). However, he has delegated the Subsection B authority only to the Director of the Office of Workers' Compensation Programs (OWCP), not to the deputy commissioners or ALJs. 20 C.F.R. §§ 701.201, 701.202, 701.301(a)(6), 702.242.[3]
 
 
 13
 The statute is both precise and clear in the distinction it draws between the authority to approve a settlement discharging the employer of liability for compensation payments and the power to sanction a settlement that releases the employer from liability for medical benefits. Given the clarity of the statutory language, we are not free to weigh the policy considerations advanced by the employer. Direct statutory provisions must be applied as written. They neither permit nor require resort to judicial notions of policy.
 
 
 14
 The employer contends that, because the ALJ may reject a claim, he should in the interest of the employee have the authority to approve a settlement providing for partial payment. We need not supply the answer to the employer's contention but we may conjecture that Congress took into account the fact that the ALJ's rejection of a claim may be appealed by the aggrieved employee while his approval of a compromise would be irrevocable.
 
 
 15
 There is, the Director urges, method in the statutory scheme of settlement authorization. According to the Director, the Secretary has the investigative power and the administrative expertise to extend the inquiry into the advisability of the settlement beyond the adjudicatory record.[4] However, both the logic and the humanitarian impact of Congress' considered decisions are for its evaluation. "It is not our province ... to write legislation that Congress either overlooked or designedly chose not to write...." S.H. Du Puy v. Director, Office of Workers' Compensation Programs, 519 F.2d at 541. "Congress has put down its pen, and (the Court) can neither rewrite Congress' words nor call it back 'to cancel half a line.' " Director, Office of Workers' Compensation Programs v. Rasmussen, 440 U.S. 29, 47, 99 S.Ct. 903, 913, 59 L.Ed.2d 122, 135 (1979). Our course is particularly straight when we consider a statute only recently enacted, not one weathered by years and dulled by changes in circumstance. The general provisions of the Administrative Procedure Act, 5 U.S.C. § 551 et seq., relied upon by Chief Administrative Appeals Judge Smith in his dissent from the opinion of the BRB, see 5 U.S.C. §§ 554(a), 554(c)(1) and 556(c)(6), do not alter the later-enacted and more specific provisions of the LHWCA.
 
 
 16
 Therefore, we hold that the ALJ correctly determined that he is not empowered by the statute to approve settlements involving medical benefits. This does not mean, as the employer urges, that compromise is impossible. It simply means that the ALJ has no authority to sanction the agreement. The petition for approval of the settlement must be directed instead to the Director of the OWCP as the Secretary's designee.
 
 
 17
 In Ingalls Shipbuilding Corp. v. Joyner, 587 F.2d 649 (5th Cir. 1978), on petition for rehearing, 587 F.2d 650 (5th Cir. 1979), we considered a related problem: whether this court has power to approve a compromise settlement and dismiss an appeal from a BRB decision. Because the employer's settlement offer was conditioned on its being approved by the court and provided that the offer would be withdrawn if it were necessary to remand the case to the Director for approval, we thought it infeasible to confront the problem of our jurisdiction to approve the settlement. Instead, we elected to follow our action in an unreported case, Ingalls Shipbuilding Corp. v. Spicer, No. 74-3465 (5th Cir. April 18, 1975).
 
 
 18
 As the dissent in Joyner pointed out, the order granting the motion to approve a compromise settlement in Spicer was entered despite the pendency of a motion to remand filed by the Secretary. The motion to remand, which was not mentioned in the court's Spicer order, urged that this court lacked authority to pass on proposed compromise settlements. It was not possible to determine from the Spicer opinion or record whether the question of this court's jurisdiction to approve the settlement was in fact considered. Apparently, no motion to reconsider the order was filed in the Spicer case. Ingalls Shipbuilding Corp. v. Joyner, 587 F.2d at 650-51 (Rubin, J., dissenting).
 
 
 19
 We have carefully reviewed both the Spicer record and the Joyner opinion. The majority opinion in Joyner concluded, "(w)hat we have decided, and all that we have decided, is that in this context and for this day the court follows Spicer." We do not think that this circumscribed disposition creates a precedential rule that has become the law of the circuit. In any event the Joyner decision, which dealt with court approval of a settlement agreement that did not involve medical benefits, is not binding in this case which involves the authority of an ALJ, whose actions would be reviewable by the BRB, to approve a settlement discharging liability for medical benefits under the Act. We once again leave for the day it is squarely presented the issue of our compromise-approval authority as an appellate court, whether implicit or derived from the statute.
 
 
 20
 For these reasons, the order of the BRB is AFFIRMED.
 
 
 
 [1]
 The Director of the Office of Workers' Compensation Programs (OWCP) disagrees with the holding of Clefstad. We express no view concerning this controversy, referring to the BRB's Clefstad decision only to trace the pattern that may distinguish settlements that involve only compensation payments from those that involve medical benefits
 
 
 [2]
 The legislative history supports the proposition that the ALJ has authority to approve settlements under Subsection A but does not have such authority in regard to settlements involving medical benefits under Subsection B. The congressional reports state that "Subsection 8(i)(A) provides that the deputy commissioner, Board, or Court may approve a settlement discharging an employer from liability for compensation if he deems it to be in the best interests of the employee .... Subsection 8(i)(B) provides that the Secretary of Labor may approve a settlement covering payment of medical benefits." H.R.Rep.No.92-1441, 92d Cong., 2d Sess. 23, reprinted in (1972) U.S.Code Cong. & Ad.News 4698, 4720 (emphasis added); S.Rep.No.92-1125, 92d Cong., 2d Sess. 26 (1972) (emphasis added). Thus, nothing in the legislative history indicates that the reference to the Secretary in Subsection B was to have other than its plain meaning
 
 
 [3]
 Applications for approval of an agreed settlement of future medical benefits are first submitted to the deputy commissioner, 20 C.F.R. § 702.242(b), who, after consultation with the parties, forwards the application together with his recommendations to the Director, OWCP, "for such action as the Director considers appropriate ...." 20 C.F.R. § 702.242(c). The language of the regulations governing the procedure for settlement approval explicitly states that the deputy commissioner can make only a "recommendation" and that final approval can only come from the Director, OWCP, as designee of the Secretary. 20 C.F.R. § 702.242(c). Although the regulations permit the Director of OWCP "or his designee" to make the determination that the settlement involving medical benefits is in the employee's best interests, 20 C.F.R. § 702.242(a), we know of no delegation of that authority by the Director
 
 
 [4]
 The Director urges that the authority to approve agreed settlements in workers' compensation cases involving medical benefits is not merely the familiar function of reviewing the proposed settlement to ensure that it does not result from the injured person's ignorance of his rights or from some overreaching by the insurer. Rather, the Director contends that the power to sanction settlement agreements carries with it the responsibility to "second-guess" the claimant, even when he is represented and advised by counsel of unquestioned competence and general good judgment, on the question whether the short-term gain of the settlement serves the best interests of the claimant more than the long-term security and potential gain of the continuing entitlement provided by the Act. According to the Director, this authority cannot properly be discharged by acceptance of the parties' representations. The very nature of the approval responsibility necessitates an inquiry beyond the joint presentation of the claimant and the employer or insurer. The Director interprets the Section 8(i)(B) requirement that approval can be granted only if it is "determine(d)," as opposed to merely represented by the claimant or his attorney, to be in the claimant's best interests to mandate an extended examination into the desirability of the agreement. A significant error by the claimant in the evaluation of the advisability of the settlement will, according to the Director, be directly damaging to the public interest in the long run, as well as to the interests of the claimant. See the Report of the National Commission on State Workmen's Compensation Laws, 109-110 (1972)