Shirley **TYSON, as Natural Mother and Attorney-in-Fact for Timothy Patrick Tyson, Plaintiff-Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 83–3128.

United States Court of Appeals, Eleventh Circuit.

March 19, 1984.

Massie & Scott, James C. Massie, Tallahassee, Fla., for plaintiff-appellant.

John W. Wojciechowski, Baltimore, Md., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and KRAVITCH, Circuit Judges.

GODBOLD, Chief Judge:

This appeal, in a social security case, raises the constitutionality of 42 U.S.C. Sec. 410(a)(3)(A) (1976 & Supp. V 1981), which provides in pertinent part:

(a) The term "employment" means any service performed ... by any employee for the person employing him ... except that ... such term shall not include ... (3)(A) Service performed by ... a child under the age of twenty-one in the employ of his father or mother.

The district court found that the statute had a rational basis, was not constitutionally overinclusive, and therefore was constitutional. We affirm.

Plaintiff's son, Timothy, was employed by his father, who owned a sole proprietorship. Timothy was married, self-supporting, and lived away from home. Timothy and his father had reported his wages, and the proper Social Security tax had been paid as provided by FICA. During the month in which Timothy turned 21 he was involved in a car accident and became totally disabled.

Timothy's mother filed an application for Social Security disability insurance benefits with the Social Security Administration. The agency denied benefits on the ground that Timothy did not meet the insured status requirements because the wages he earned from his father's business were excluded from coverage under Sec. 410(a)(3)(A). On reconsideration the agency affirmed the denial of benefits because of the statute's exclusion. The Secretary of Health and Human Services and the plaintiff then executed an expedited appeals agreement under which further administrative proceedings were waived and Timothy's entitlement to benefits was established except for the exclusion mandated by Sec. 410(a)(3)(A). This agreement constituted the final decision of the Secretary.

Plaintiff brought this action in district court seeking a finding that Sec. 410(a)(3)(A) is unconstitutional because it is arbitrary and irrational, lacks a legitimate government goal, is not related to a legitimate government goal, and is overinclusive. The district court rejected these arguments and found the statute constitutional.

■ Social security legislation is tested under a rational basis standard. *See Weinberger v. Salfi,* 422 U.S. 749, 768–70, 95 S.Ct. 2457, 2468–69, 45 L.Ed.2d 522 (1975). As the *Salfi* court explained:

"Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."

*Id.* at 768, 95 S.Ct. at 2468 (quoting *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)). The Court has pointed out, however, that the rational basis standard is "not a toothless one." *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976).

■ Legislative history indicates that prevention of collusion was the intent of Congress when it adopted this provision in

1939. H.R.Rep. No. 728, 76th Cong., 1st Sess. 46 (1939). Prevention of fraud on the Social Security system is a legitimate government goal. *See Salfi,* 422 U.S. at 777–84, 95 S.Ct. at 2472–76. The statute furthers this legitimate government goal by excluding a class of people whose situation suggests a high potential for collusion. *See id.* at 780, 95 S.Ct. at 2474. Furthermore, "Congress could rationally have concluded that any imprecision from which it [the statute] might suffer was justified by its ease and certainty of operation." *Id.*

That the age of majority in many states is now 18 rather than 21 does not affect the constitutionality of the statute. The age of majority and the age limitation for exclusion of employment by parents from Social Security coverage implicate different concerns. When Congress enacted Sec. 410(a)(3)(A), it sought to prevent fraud on the Social Security Administration by parents who employ their children. Reduction in the age of majority does not necessarily reduce or even affect the likelihood of fraud between parents and children when children seek employment. Furthermore, reduction of the age limitation is a choice for Congress, and as long as Congress's original purpose of preventing fraud on the Social Security system by parental employment of children under 21 is not presently arbitrary and irrational, change in the age of majority in states does not change our analysis of the statute.

The "irrebutable presumption" cases of *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) do not require the government to make an individualized determination of collusion. The *Salfi* court answered this argument when it stated that "these [irrebutable presumption] cases are not controlling on the issue before us now." *Salfi,* 422 U.S. at 771, 95 S.Ct. at 2470. The Court distinguished *Stanley* and *LaFleur* on the ground that the interests in those cases, unlike a noncontractual claim to government funds, enjoyed "constitutionally pro-

tected status." *Id.* at 771–72, 95 S.Ct. at 2470. The *Salfi* court further explained that *Vlandis* was distinguishable because it involved a different issue, making "plainly relevant evidence ... inadmissible." *Id.* The irrebutable presumption cases do not control this case.

In 1960 Congress repealed another provision of the section at issue that had excluded from coverage employment of a parent by a child. This action does not make the remaining provision arbitrary. Congress could have rationally concluded that there likely would be less occasion for fraud when children employed their parents because such a situation would occur less often. Furthermore,

[e]vils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.

*Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (citations omitted). Congress's repeal of the provision excluding coverage of employment of a parent by a child does not render the statute unconstitutional.

■ The statute is not unconstitutionally overinclusive. Congress is not required to draw lines with great precision when it enacts social welfare legislation. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970). As the *Salfi* court noted,

the question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute.... Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than non-members. The ques-

tion is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individualized determinations justified the inherent imprecision of a prophylactic rule.

*Salfi,* 422 U.S. at 777, 95 S.Ct. at 2472–73. Under this standard, the statute is constitutional. Exclusion of children under 21 employed by their parents protects against the occurrence of fraud. Making individualized determinations of collusion would not only be expensive but could also be difficult, as it may be possible to structure a situation so that no collusion appears although fraud actually exists. Consequently, potential overinclusiveness does not make the statute unconstitutional.

That the statute does not exclude from coverage children employed by their parents' wholly-owned corporation or partnership does not render the statute unconstitutional. Congress reasonably could have concluded that less likelihood of collusion exists with employment by partnerships and corporations, as many such organizations are not wholly-owned, and consequently people other than a child's parents play a role in hiring the child. Such a difference in treatment is not arbitrary and does not render the statute unconstitutional.

AFFIRMED.

KRAVITCH, Circuit Judge, concurring:

I agree, for the reasons stated in the majority's opinion, that 42 U.S.C. § 410(a)(3)(A) is constitutionally valid under *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), as a pro-

phylactic rule not "utterly lacking in rational justification." *Id.* at 768, 95 S.Ct. at 2468. Although the statute is valid, I believe it important to point out its harsh results in this case: the plaintiff's son, a married, self-supporting individual living away from home, will be denied disability insurance benefits although no one contends that he was in collusion with his father or did not properly pay his Social Security taxes.

Such harsh results may be to a degree an inevitable consequence of prophylactic rules. In my view, however, Congress should be cognizant that § 410(a)(3)(A)'s reliance on the age of twenty-one [1] as a basis for determining eligibility for disability benefits, although not wholly irrational, no longer bears a significant relationship to reality or other provisions of the Social Security Act. Perhaps in 1939, when the statute was passed, the age of twenty-one was a realistic dividing point, but, in light of the Twenty-sixth Amendment and the legislative trend toward using eighteen years of age as the age of majority, twenty-one no longer is a reliable benchmark of an individual's independence from his parents. Indeed, 42 U.S.C. § 402(d) premises eligibility for child's insurance benefits on the child being under eighteen years of age.[2] Juxtaposing § 410(a)(3)(A) and § 402(d) thus highlights the problem: one is a "child" in the eyes of the law until twenty-one if one works for his parents but only a "child" until eighteen if one seeks child's insurance benefits. In my opinion, the incongruity between § 410(a)(3)(A) and other provisions of the Social Security Act, and the questionable usefulness of the age of twenty-one for determining whether an individual is independent from his parents, deserve congressional attention.

1. Section 410(a)(3)(A) refers to an individual under twenty-one years of age as a "child." In light of changed circumstances since the section's enactment in 1939, see discussion *infra,* the use of the term "child" in itself shows that the section is premised on antiquated notions of when an individual becomes independent from his parents.

2. Section 402(d) makes exceptions for individuals who are disabled before the age of twenty-two or who are still "full-time elementary or secondary school student[s]" under the age of nineteen.