**Gladyce V. CORNELIUS,**
**Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D.,\* Secretary**
**of Health and Human Services,**
**Defendant–Appellee.**

**No. 90–7233**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 19, 1991.

---

\* Editors Note: This opinion was originally published at 923 F.2d 1486. It is published here as corrected.

Peggy Hale Cook, Birmingham, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Marvin N. Smith, Jr., Birmingham, Ala., for defendant-appellee.

Before ANDERSON and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.

BIRCH, Circuit Judge:

This case raises the equal protection question of whether a parent who is employed by a married son or daughter for providing childcare services is entitled to count such time toward Social Security retirement benefits. No federal circuit court has addressed the constitutionality of the Social Security statutes and regulations that render this result. Plaintiff-appellant Gladyce V. Cornelius claimed coverage for the money that she earned as a babysitter in her own home for her married daughter's child during a two-year period. The Social Security Administration denied credit for these earnings, and the Appeals Council and the federal district court confirmed that decision. Upon reviewing the record and the applicable law, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gladyce Cornelius began caring for her granddaughter on a regular basis in 1984, because she and her daughter were concerned about the quality of day care and increasing reports of abuse and neglect in day care centers. The child's mother, who was married and employed by the Alabama Institute for the Deaf and Blind, started paying her mother for the babysitting services in 1986. Cornelius received $45 per week as salary from which Social Security tax deductions were withheld.

Cornelius, who was born on January 21, 1923, applied for Social Security retirement

benefits on November 16, 1987, prior to her sixty-fifth birthday. She was denied benefits on December 22, 1987, because she lacked three requisite quarters of coverage. On January 11, 1988, she filed a request for reconsideration and submitted evidence of six quarters of coverage and earnings of $973.40 in 1986, and $1,920.00 in 1987 for babysitting services for her grandchild in her own home. Cornelius has not alleged that she was paid for work prior to 1986 or after 1987. She again was denied benefits on March 16, 1988.

Pursuant to her request, Cornelius was given an administrative hearing at which she appeared with counsel and testified. The administrative law judge's opinion, issued on September 26, 1988, concluded that Cornelius was not entitled to Social Security retirement benefits because she had only 31 of the 34 quarters of coverage required to be a fully insured individual. The administrative law judge found that Cornelius's earnings for babysitting her granddaughter specifically were excluded by 20 C.F.R. § 404.1015(a)(4), which excepts from coverage domestic services in the home of an applicant's son or daughter as his or her employee.

The Appeals Council granted Cornelius's request for review. While concurring in the administrative law judge's factual findings, the Appeals Council determined that the administrative law judge had made an error of law in applying the relevant regulation. Because Cornelius cared for her granddaughter in her own home, 20 C.F.R. § 404.1015(a)(4), excluding domestic work performed by a parent in a son or daughter's private home as an employee of that child, was inapplicable. The Appeals Council concluded, however, that 20 C.F.R. § 404.1015(a)(3) excluded from coverage nonbusiness work as an employee of a relative. Since nonbusiness refers to work which does not promote or advance the employer's trade or business, the Appeals Council denied coverage because it determined that Cornelius's babysitting services did not assist her daughter in her work at the Alabama Institute for the Deaf and Blind. Based on a different regulation, therefore, the Appeals Council reached the same result as the administrative law judge to deny Cornelius coverage. The decision of the Appeals Council issued on May 12, 1989, and became the final decision of the Secretary of Health and Human Services (Secretary).

Cornelius filed this action in the United States District Court for the Northern District of Alabama on July 18, 1989, pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides judicial review of a final decision by the Secretary. The district court affirmed the Secretary's decision. Cornelius has pursued in this court her constitutional, equal protection challenge to section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B), and the relevant regulations under which she was denied coverage for childcare to her granddaughter.

## II. DISCUSSION

We review the Secretary's decision with deference to the factual findings and close scrutiny of the legal conclusions. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990); *see Graham v. Bowen*, 790 F.2d 1572, 1574–75 (11th Cir.1986). The Secretary's factual findings are conclusive if supported by "substantial evidence," consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). We do not reweigh the evidence or substitute our judgment for that of the Secretary; instead, we review the entire record to determine "if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239 (citations omitted); *see Martin*, 894 F.2d at 1529 ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."). In contrast, the Secretary's conclusions of law are not presumed valid. *Martin*, 894 F.2d at 1529; *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for deter-

mining that the proper legal analysis has been conducted mandates reversal. *Martin*, 894 F.2d at 1529.

Section 202(a) of the Social Security Act, codified at 42 U.S.C. § 402(a), provides that an individual who has attained age 62, has properly filed for old-age insurance benefits, and is fully insured is entitled to retirement income benefits.[1] The facts that Cornelius had attained the requisite age of 62 and had applied for retirement benefits are undisputed. The discrepancy occurs in the Secretary's determination that Cornelius was not a "fully insured individual" because she had not worked the sufficient number of quarters to claim old-age benefits.[2]

The parties agree that Cornelius's birth date required her to have 34 quarters of coverage to qualify as a "fully insured individual." Based upon Cornelius's initial application, the Secretary determined that she had only 31 quarters of coverage. Her application for reconsideration claimed an additional 6 quarters of coverage for the time that she had worked in her home as a babysitter for her granddaughter.

■ Section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B), excludes from coverage a parent's employment by a child:

(B) Service not in the course of the employer's trade or business, or domestic service in a private home of the employer, ... performed by an individual in the employ of his spouse or son or daughter; except that the provisions of this subparagraph shall not be applicable to such domestic service performed by an individual in the employ of his son or daughter if—

(i) the employer is a surviving spouse or a divorced individual and has not remarried, or has a spouse living in the home who has a mental or physical condition which results in such spouse's being incapable of caring for a son, daughter, stepson, or stepdaughter (referred to in clause (ii)) for at least 4 continuous weeks in the calendar quarter in which the service is rendered, and

(ii) a son, daughter, stepson, or stepdaughter of such employer is living in the home, and

(iii) the son, daughter, stepson, or stepdaughter (referred to in clause (ii)) has not attained age 18 or has a mental or

---

1. **(a) Old-age insurance benefits**

Every individual who—
(1) is a fully insured individual (as defined in section 414(a) of this title),
(2) has attained age 62, and
(3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained retirement age (as defined in section 416(*l*) of this title),
shall be entitled to an old-age insurance benefit for each month, beginning with ... the first month in which such individual meets the criteria specified ... and ending with the month ̄preceding the month in which he dies.
42 U.S.C. § 402(a) (Supp. V 1987).

2. Section 214(a) of the Social Security Act, 42 U.S.C. § 414(a), defines "fully insured individual" in pertinent part as follows:

**(a) "Fully insured individual" defined**
The term "fully insured individual" means any individual who had not less than—
(1) one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or, if later, the year in which he attained age 21) and before the year in which he died or (if earlier) the year in which he attained age 62, except that in no case shall an individual be a fully insured individual unless he has at least 6 quarters of coverage; or
(2) 40 quarters of coverage; ....
42 U.S.C. § 414(a) (1982).
The terms "quarter," "calendar quarter" and "quarter of coverage" are defined in section 213(a) of the Social Security Act, 42 U.S.C. § 413(a), in relevant part as follows:
(1) The term "quarter", and the term "calendar quarter", mean a period of three calendar months ending on March 31, June 30, September 30, or December 31.
(2)(A) The term "quarter of coverage" means—
(i) for calendar years before 1978, and subject to the provisions of subparagraph (B), a quarter in which an individual has been paid $50 or more in wages (except wages for agricultural labor paid after 1954) or for which he has been credited (as determined under section 412 of this title) with $100 or more of self-employment income; ....
42 U.S.C. § 413(a)(1), (a)(2)(A) (1982 & Supp. V 1987).

physical condition which requires the personal care and supervision of an adult for at least 4 continuous weeks in the calendar quarter in which the service is rendered; ....

42 U.S.C. § 410(a)(3)(B) (1982 & Supp. V 1987).

Additionally, applicable regulations provide as follows:

**Family Services.**

(a) *General.* If you work as an employee of a relative, the work is excluded from employment if—

....

(3) You do nonbusiness work as an employee of your son or daughter (see § 404.1059(a)(3) for an explanation of nonbusiness work)....

20 C.F.R. § 404.1015(a)(3) (1988). "Nonbusiness work" is defined as follows:

(3) *Definitions.* The term "services not in the course of the employer's trade or business" (also called nonbusiness work) means services that do not promote or advance the trade or business of the employer.

20 C.F.R. § 404.1059(a)(3). While not denying that a valid employer/employee relationship may have existed between Cornelius and her daughter, the Secretary determined that credit for this work is excluded from coverage by the relevant statutes and regulations.

Cornelius has not challenged the Secretary's factual findings or application of the statutes and regulations to those facts. She contends that section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B), is arbitrary and irrational because it distinguishes her for the purpose of denying retirement benefits on the basis of her daughter's marital status. She, therefore, argues that this section, as it applies to her, violates the equal protection clause of the Fourteenth Amendment.

"Social security legislation is tested under a rational basis standard." *Tyson v. Heckler,* 727 F.2d 1029, 1030 (11th Cir.), *cert. denied,* 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 111 (1984); *see Oliver v. Ledbetter,* 821 F.2d 1507, 1513 (11th Cir.1987) ("[C]lassifications created by social welfare legislation must withstand a minimal level of

scrutiny in order to survive due process and equal protection challenges."). A categorical oversight does not render a statute constitutionally infirm:

In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"

*Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976) (quoting *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)); *see Weinberger v. Salfi,* 422 U.S. 749, 769, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975) (A classification is not unconstitutional simply because it is not drawn with mathematical exactness or results in some inequality; it must be upheld if it has a "reasonable basis."); *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971) ("A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.'" (quoting *Dandridge,* 397 U.S. at 487, 90 S.Ct. at 1162)); *Tyson,* 727 F.2d at 1031 ("Congress is not required to draw lines with great precision when it enacts social welfare legislation."). Furthermore, with respect to spending money for the general welfare:

Our review is deferential because "[g]overnment decisions to spend money [Social Security funds] to improve the general public welfare in one way and not in another are 'not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.'"

*Oliver,* 821 F.2d at 1515 (quoting *Bowen v. Owens,* 476 U.S. 340, 345, 106 S.Ct. 1881, 1885, 90 L.Ed.2d 316 (1986) (citations omitted)); *see Bowen,* 476 U.S. at 345, 106 S.Ct. at 1885 (The Social Security program is a "massive one, and requires Congress to make many distinctions among classes of

beneficiaries while making allocations from a finite fund.").

The legislative history of section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B), is instructive in our assessment of the rational basis envisioned by Congress in enacting this legislation complete with amendments. As originally adopted in 1935, section 210 of the Social Security Act, 42 U.S.C. § 410, sought to prevent fraud on the Social Security Administration by parents and their children who might fabricate employment to obtain retirement benefits. H.R.Rep. No. 728, 76th Cong., 1st Sess., at 46 (1939).[3] "Prevention of fraud on the Social Security system is a legitimate government goal." *Tyson*, 727 F.2d at 1031.

In 1950, Congress amended the Social Security Act to include coverage of many domestic workers.[4] A new exclusion was adopted for service performed by an individual employed by his son, daughter or spouse, and service by a child under 21 in the employ of his parent.[5] Consequently, both domestic and business employment between parent and child were not covered by the Social Security Act.

Congress amended the Social Security Act in 1960 to include within the definition of employment any service between a parent and child performed in the course of the employer's trade or business. In enacting this provision, Congress reasoned:

Under present law, work performed by certain members of the same family for other members of a family is excluded from coverage. The chief purpose of this exclusion has been to preclude the necessity of making determinations regarding bona fide employment relationships in an area where it is difficult to ascertain the facts. Your committee has concluded that in light of operating experience with the program, valid determinations can now be made as to whether actual employment relationships exist with respect to the services performed by parents working as employees in businesses owned by adult sons or daughters. Your committee's bill would therefore modify the family employment exclusion to cover certain services performed after 1960 by parents in the employ of their adult children.

H.R.Rep. No. 1799, 86th Cong., 2d Sess., at 18–19 (1960). While Congress with this amendment elected to encompass parent-child business employment under the Social Security Act, it did not include domestic employment.

The last relevant amendment[6] occurred in 1968, when Congress included certain factual circumstances in which parent-child domestic employment would fall within the coverage of the Social Security Act. Congress recognized that the genuine need may exist for a parent-child employment relationship, but restricted coverage to specified circumstances:

*Family Employment*

The committee added a provision to the House bill to extend social security cov-

---

**3.** The House Report stated:

This exclusion [service performed by an individual employed by his son, daughter or spouse, and service performed by a child under age 21 in the employ of his parent] is already contained in the Federal unemployment tax provisions of the existing law and is considered advisable because of the possibility offered by such employment for collusion in building up credits in certain cases which offer a high return for a small amount of contributions.

H.R.Rep. No. 728, 76th Cong., 1st Sess., at 46 (1939).

**4.** Employees in domestic service.—This group, whose need for the protection of social insurance is very great, is not covered under present law. They have been excluded mainly because of the administrative difficulties

which were believed to be involved in their coverage.

S.Rep. No. 1669, 81st Cong., 2d Sess. 14, *reprinted in* 1950 U.S.Code Cong. Serv. 3302.

**5.** The 1950 amendment excluded:

Service performed by an individual in the employ of his son, daughter, or spouse, and service performed by a child under the age of twenty-one in the employ of his father or mother....

Section 210(a)(4) of the Social Security Act, 42 U.S.C. § 410(a)(4) (Supp. IV 1950).

**6.** In 1987, section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B), was amended to extend the exclusion of nonbusiness employment to employment of children under 21 by their parents. Pub.L. No. 100–203, § 9005(a)(1) (1987).

erage to domestic employment performed in an employer-employee relationship by a parent for his son or daughter where there is a need for the parent to perform the work. The employment would be covered if the son or daughter is (a) a widow or widower with a child under age 18 or a disabled child or (b) a person with such a child who either is divorced or has a disabled spouse.

S.Rep. No. 744, 90th Cong., 1st Sess. 10 (1967), *reprinted in* 1967 U.S.Code Cong. & Admin.News 2843. By extending coverage to these particular situations, the necessity of making individualized determinations was removed.

With various factual situations having been considered and allowed coverage incorporated in the Social Security Act by amendments, Congress to date has not amended section 210(a)(3)(B), 42 U.S.C. § 410(a)(3)(B), to include the parent-child domestic employment presented in this case of a parent being employed by a child when the employing child is married and both spouses work. In analyzing the equal protection concerns relating to this section,

the question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute.... Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individualized determinations justified the inherent imprecision of a prophylactic rule.

*Salfi,* 422 U.S. at 777, 95 S.Ct. at 2472–73.

Under the circumstances of this case, the obvious Congressional concern is the potential for collusion in a parent-child domestic employment situation because both parties have a direct financial interest in the parent receiving Social Security benefits. This concern is evident in situations where the child may need to support the parent if retirement benefits are denied. The excepted situations that Congress has decided to cover reasonably are based not on marital status, but on the fact that a parent, who is the sole provider and caregiver because of divorce, death or disablement, is likely to have a legitimate need for domestic services provided by a parent or another. While parents who provide domestic services to a child married to an ablebodied, gainfully employed spouse may be disadvantaged by the current statute, "[s]uch harsh results may be to a degree an inevitable consequence of prophylactic rules." *Tyson,* 727 F.2d at 1032 (Kravitch, J., concurring).

Although neither this circuit nor any other circuit has addressed the constitutionality of section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B), we find analytical analogy in two Eleventh Circuit cases deciding the constitutionality of other sections of the Social Security Act. *Tyson* concerned the constitutionality of section 210(a)(3)(A) of the Social Security Act, 42 U.S.C. § 410(a)(3)(A), which precluded a married, self-supporting son employed by his father, who owned a sole proprietorship, from receiving Social Security benefits because the son was not 21 when he was involved in a car accident and became totally disabled. There was no contention of collusion between the father and son or that the son's Social Security taxes were not paid. This court recognized that Congress enacted the questioned provision of the Social Security Act to prevent fraud on the Social Security Administration by parents, who employ their children, and that exclusion of children under 21 employed by their parents protected against the occurrence of fraud. *Tyson,* 727 F.2d at 1031, 1032. The court also concluded that individualized collusion determinations were expensive and could be difficult since certain situations may evidence no apparent collusion, although fraud actually exists. *Id.* at 1032. Despite the statute's failure to preclude coverage for children employed by their parents' wholly-owned corporation or partnership, the court found that "Congress reasonably could have concluded that

less likelihood of collusion exists with employment by partnerships and corporations, as many such organizations are not wholly-owned, and consequently people other than a child's parents play a role in hiring the child." *Id.*

Similarly, the plaintiff's allegations in *Oliver* included the complaint that the method used to calculate income under the Aid to Families with Dependent Children (AFDC) program, established by title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.*, constituted an equal protection violation. Under 45 C.F.R. § 206.10(a)(1)(vii), Old Age, Survivors, and Disability Insurance (OASDI), benefits received by parents or siblings living in the same household as a qualifying AFDC recipient must be included in the amount used to determine AFDC eligibility. This court recognized that:

> The regulation effectively divides OASDI beneficiaries into two classes: those who live with family members who are otherwise eligible for AFDC assistance, and those who do not. In the first case, the regulation compels that the OASDI benefits be used for the entire family, while in the second case, the recipient enjoys full use of the benefits.

*Oliver*, 821 F.2d at 1516. Despite the apparent unfairness, this court found that the classification was not arbitrary because it furthered "the federal and state governments' interest in distributing limited AFDC funds to the most needy families." *Id.*

" 'It is not our province ... to write legislation that Congress either overlooked or designedly chose not to write.... Congress has put down its pen, and [the Court] can neither rewrite Congress' words nor call it back "to cancel half a line." ' " *Marine Concrete v. Director, Office of Work-*

*ers' Compensation Programs*, 645 F.2d 484, 487 (5th Cir. Unit A May 1981); (quoting *S.H. Du Puy v. Director, Office of Workers' Compensation Programs*, 519 F.2d 536, 538 (7th Cir.1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976); *Director, Office of Workers' Compensation Programs v. Rasmussen*, 440 U.S. 29, 47, 99 S.Ct. 903, 913, 59 L.Ed.2d 122, 135 (1979)); *see In re Davis*, 911 F.2d 560, 562 (11th Cir.1990) (per curiam) ("We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face."). Nevertheless, the Social Security Act constantly is revised and we note that Congress has been responsive to lifestyle changes, evidenced in the amendments to section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B).[7] In upholding the constitutionality of this section in a similar case where a mother provided housekeeping and childcare services to her daughter and son-in-law, both of whom were employed full-time, a district court has voiced our concerns regarding adapting section 210(a)(3)(B) of the Social Security Act to contemporary societal realities, which may necessitate the full-time employment of husband and wife and the consequent need for childcare:

> We cannot say that the concerns expressed by Congress are unfounded or that the means adopted to achieve its goals are irrational. We do feel that Congress has excluded a significant number of situations in which the need for domestic service is at least as great as in those situations included within the statute's coverage. The statute presumes that there is no need for domestic service when both spouses are present and able to work, apparently on the assumption

---

**7.** In the context of another provision of the Social Security Act, this court applied the statute as written. *Tyson*, 727 F.2d at 1030–32. The concurring judge disliked the result not only because it was harsh, but also because it was not in keeping with an accepted fact of contemporary life. *Id.* at 1032 (Kravitch, J., concurring). Judge Kravitch's concurrence in *Tyson* suggested that the use of 21 as the demarcation age for disability eligibility in section 210(a)(3)(A) of the Social Security Act, 42 U.S.C. § 410(a)(3)(A), was no longer realistic as it

might have been in 1939, when the section was enacted. In view of the Twenty-sixth Amendment and the legislative trend toward using 18 as the age of majority as well as the use of that age in other provisions of the Social Security Act, Judge Kravitch emphasized that the section deserved congressional attention. *Id.* In 1987, section 210(a)(3)(A) of the Social Security Act, 42 U.S.C. § 410(a)(3)(A), was amended to change the age of exclusion for all employment of a child by his parent from age 21 to age 18. Pub.L. No. 100–203, § 9005(a)(1) (1987).

that under these circumstances the woman works in the home and the man in the marketplace; this flies in the face of the fact that in a large percentage of families, both spouses are gainfully employed and thus they may well be in need of the services of a domestic worker. It is Congress's failure to include this widespread circumstance within the exceptions to section 410(a)(3)(B) which is at the heart of this action. Plaintiff's daughter and son-in-law resided together and both were able to work. The son-in-law was employed full-time and the daughter sought to work. The presence of a six-month old child meant that a domestic worker was necessary in order for both spouses to work and understandably the daughter hired her mother rather than a stranger to care for her child. While the administrative law judge found the employment to be bona fide, the absence of these factual conditions from the list of exceptions to section 410(a)(3)(B) compelled the conclusion that the employment was not covered by the Act.

It is unfortunate that Congress did not include the situation where both spouses are able to work, do work, and have a dependent at home, within the exceptions to the parent-child domestic service exclusion rule. Such oversight, however, does not render a statute constitutionally infirm.

*Yee v. Califano*, Unempl.Ins.Rep. (CCH) ¶ 16,142 at 2113 (N.D.Cal.1978).

We also note that childcare is compensable and computable and that a grandparent's care for a grandchild is preferred because of the familial bond and love, which cannot be duplicated.[8] Congressional recognition of the desire and prevalence of grandparents caring for grandchildren is clearly needed to conform the Social Security Act to this important reality of modern living. As the statute is written presently, we must uphold section 210(a)(3)(B), 42 U.S.C. § 410(a)(3)(B), on equal protection grounds because it has a rational basis.

Accordingly, the decision by the district court is AFFIRMED.

---

**8.** In a similar case where a grandmother was denied retirement benefits under section 210(a)(3)(B) of the Social Security Act, 42 U.S.C. § 410(a)(3)(B), for the quarters that she was employed by her son and daughter-in-law as a babysitter for their four minor children, the court found that the statute dictated the result, but recognized the importance of a grandparent's care for grandchildren:

> "It is true that child rearing has an economic value that can be computed; and that persons do perform the service of child care for economic gain....
>
> In today'[s] society, a mother often has employment outside the home. When such employment requires that provisions be made for the care of minor children, the mother naturally seeks the most qualified care available. Needless to say, her own mother is often the ideal babysitter because she is able to render not only competent child care services but to add love, affection and concern for the child's welfare which is engendered by the familial relationship. But Congress has chosen to exclude from coverage under the Social Security Act certain employment by reason of family relationship. Prior to 1960 this exclusion was absolute when a parent was employed by one of his children. Today a parent may work for his child in the course of the child's trade or business, but still may not perform domestic services, whether inside or outside the home, for his children."

*Wycklendt v. Weinberger*, 381 F.Supp. 479, 483–84 (E.D.Wis.1974) (quoting *Loveless v. Weinberger*, Unempl.Ins.Rep. (CCH) ¶ 17,325 at 2417–18 (S.D.Ohio 1973)).