Noemi **FARINAS**, Plaintiff,

v.

Jo Anne B. **BARNHART**, Commissioner, Social Security Administration, Defendant.

No. 03–20512–CIV–MOORE.

United States District Court,
S.D. Florida,
Miami Division.

March 24, 2004.

Vivian Chavez and Lizel Gonzalez of Legal Services of Greater Miami, Inc., Miami, FL, for Plaintiff.

David Haimes, Assistant United States Attorney, Miami, FL, for Defendant.

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION AND FINAL JUDGMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment (DE # 24) and Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Objections (DE # 42).

THE MATTER was referred to the Honorable John J. O'Sullivan, United States Magistrate Judge. A Report and Recommendation dated January 8, 2004 (DE # 37) has been filed recommending that the January 10, 2003 decision of the Appeals Council of the Social Security Administration finding Plaintiff ineligible for Supplemental Security Income benefits be reversed and Plaintiff's motion be granted. Defendant filed objections to the Report and Recommendation, Plaintiff filed a response thereto and Defendant filed its motion to file a reply, attached with a proposed reply as Exhibit A. The Court has considered all of these and deems Defendant's reply filed as of February 25, 2004.

Accordingly, after a *de novo* review of the record herein, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Objections (DE # 42) is GRANTED. It is further

ORDERED AND ADJUDGED that United States Magistrate Judge O'Sullivan's Report and Recommendation(DE # 37) is ADOPTED in its entirety. It is further

ORDERED AND ADJUDGED, and based thereon, that the January 10, 2003 decision of the Appeals Council of the Social Security Administration finding Plaintiff ineligible for Supplemental Security Income benefits is REVERSED and Plaintiff's Motion for Summary Judgment (DE # 24) is GRANTED. This case is CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT.

## REPORT AND RECOMMENDATION

O'SULLIVAN, United States Magistrate Judge.

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment (DE # 24, 7/22/03). The plaintiff seeks reversal of the Social Security Administration's denial of Supplemental Security Income (hereinafter "SSI") Benefits. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 405(g), and is properly before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration (hereinafter "SSA"). This matter was referred to the undersigned by United States District Judge K. Michael Moore on March 12, 2003 (DE # 4). Having carefully considered the filings and applicable law, the undersigned recommends that the Plaintiff's Motion for Summary Judgment (DE # 24, 7/22/03) be GRANTED in accordance with the following Report and Recommendation.

### PROCEDURAL HISTORY

The plaintiff filed an application for SSI benefits on October 31, 1999 (Tr. 52–55). On May 15, 2001, the SSA found the plaintiff ineligible for SSI due to her immigration status (Tr. 427). Upon reconsideration, the plaintiff was again found ineligible because she was not a United States Citizen or national, or in one of the eligible alien categories (Tr. 434). The plaintiff filed a Request for Hearing on June 19, 2001 (Tr. 439). On September 24, 2002, the Administrative Law Judge (hereinafter "ALJ") issued a favorable decision for the plaintiff, and found that she was an alien eligible for SSI benefits since August 31, 2000, the date she became a lawful permanent resident (Tr. 11–18). On January 10,

2003, the Appeals Council of the SSA, on its own motion, upon referral from the Atlanta Regional Commissioner, reversed the ALJ's decision and determined that the plaintiff was not eligible for SSI benefits based on her alien status (Tr. 4–10).

## FACTS

The plaintiff entered the United States on December 17, 1981. (Tr. 421) The plaintiff has alleged disability since August 7, 1997, due to open heart surgery, cancer of the uterus, asthma, diabetes, and high blood pressure (Tr. 150). Consequently, she filed her application for SSI benefits on October 31, 1999 (Tr. 23). In her application, the plaintiff indicated that she was not a United States citizen or national (Tr. 407). On August 31, 2000, the plaintiff acquired lawful permanent resident status under the Nicaraguan Adjustment and Central American Relief Act (hereinafter "NACARA") because she is a Cuban native and has maintained a continuous physical presence in the United States since December 1, 1995 (Tr. 417–26).

## STANDARD OF REVIEW

■ Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *See Wolfe v. Chater,* 86 F.3d 1072, 1076 (11th Cir.1996). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996).

■ In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *See Lamb v. Bowen,* 847 F.2d 698, 701

(11th Cir.1988). Moreover, the reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *See Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir.1993); *See also Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir. 1987). The court may not, however, decide facts anew, re-weigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *See Miles,* 84 F.3d at 1400; *See also Baker v. Sullivan,* 880 F.2d 319, 321 (11th Cir.1989).

■ The restrictive standard of review, however, applies only to the findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. See *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–1146 (11th Cir.1991) ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal"); *accord Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990).

## LEGAL ANALYSIS

■ The Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996 prevented many aliens from receiving federal public benefits, such as supplemental security income. In order to qualify for federal public benefits, an alien is required to establish that she is a "qualified alien." 8 U.S.C.A. § 1611(a). The term "qualified alien" means an alien who, at the time the alien applies for, receives, or attempts to receive a Federal public benefit is: (1) an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act; (2)

an alien granted asylum; (3) a refugee admitted to the United States; (4) an alien paroled in the United States for a period of at least one year; (5) an alien whose deportation is withheld under section 243(h) of the Immigration and Nationality Act (hereinafter "INA"), or removal withheld under section 241(b)(3) of the INA; (6) an alien granted conditional entry pursuant to section 203(a)(7) of the INA; (7) an alien who has been battered or who has experienced extreme cruelty in the United States by a family member residing in the same household; or (8) a Cuban/Haitian entrant. 8 U.S.C.A. § 1641(b).

The PRWORA adds that if a "qualified alien" enters the United States on or after August 22, 1996, he is not eligible for any Federal-means tested public benefit for a period of five years from the time he acquires that status.[1] 8 U.S.C.A. § 1612. However, 'Cuban/Haitian entrants,' as well as four other categories of "qualified aliens," are exempt from this time requirement and are eligible to receive SSI benefits without the five-year waiting period. 8 U.S.C.A. §§ 1612(a)(2)(A)(iv).

In the instant case, the plaintiff is a "qualified alien" pursuant to 8 U.S.C.A. § 1641(b)(1) because she both applied for federal public benefits, and was lawfully admitted for permanent residence on August 31, 2000 (Tr. 19, 29). Consequently, at issue is whether the plaintiff meets the exception for 'Cuban/Haitian entrants,' and is immediately eligible for SSI benefits.

The Refugee Education Assistance Act (hereinafter "REAA") defines 'Cuban/Haitian entrant' as:

Any individual granted parole status as a Cuban/Haitian entrant (Status Pending) or granted *any other special status* subsequently established under the immigration laws for nationals of Cuba or

Haiti, regardless of the status of the individual at the time assistance or services are provided...

8 U.S.C.A. § 1522 note, (Sec.501(e)-definition of Cuban/Haitian entrant) (emphasis supplied). Although the act does not define 'special status,' the Eleventh Circuit has stated that the exception for Cuban/Haitian entrants was created as a "special status" for the purpose of providing social welfare benefits. *Garcia–Mir v. Meese*, 788 F.2d 1446, 1452 (11th Cir.1986) (questioned on other grounds). Moreover, other jurisdictions have noted that members of groups described in NACARA were granted various "special statuses." *Pinho v. I.N.S.*, 249 F.3d 183, 190 (3rd Cir.2001).

 The defendant contends that the plaintiff fails to satisfy the 'Cuban/Haitian entrant' exception because the Office of Refugee Resettlement (hereinafter "ORR") does not classify an individual's adjusted status under NACARA as a 'special status.' The ORR's definition of 'Cuban/Haitian entrant,' as described in State Letter SL00–17, states, in pertinent part:

ORR is not interpreting the phrase, "any other special status subsequently established under the immigration laws for nationals of Cuba or Haiti" to refer to lawful permanent residence obtained under the Nicaraguan Adjustment and Central American Relief Act (NACARA) or the Haitian Refugee Immigration Fairness Act (HRIFA). Although NACARA and HRIFA offer a special opportunity for nationals of Cuba and Haiti, the *status* conferred by these laws, *lawful permanent residence,* is not a "special status." Thus, if the person did not qualify as a Cuban and Haitian entrant, adjustment of status, regardless

---

1. A qualified alien 'enters' the United States when that individual obtains lawful permanent resident status. In the plaintiff's case, this occurred on August 31, 2000. 8 U.S.C. §§ 1613, 1641.

of the legal basis for the adjustment, does not make the person a Cuban and Haitian entrant.

http://www.acf.hhs.gov/programs/orr/policy /s100-17.htm (Chart # 4A, Note at Tr. 451). The defendant maintains that the Appeals Council properly relied on the ORR's definition of 'special status' because the ORR was created to help administer the REAA.[2] "The interpretation put on the statute by the agency charged with administering it is entitled to deference, . . . , but the courts are the final authorities on issues of statutory construction." *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1994) (*Internal citations omitted*).

The Appeals Council may look to the ORR's definition of 'special status' only if the plain meaning of the act is ambiguous. (*See, FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 70 L.Ed.2d 23, stating that the Courts "must reject administrative constructions of the statute, whether reached by adjudication or by rule-making, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.") If a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Guaranty Financial Services, Inc. v. Ryan*, 928 F.2d 994, 1001 (11th Cir.1991) quoting *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent". *Innab v. Reno*, 204 F.3d 1318,

1321 n. 6 (citations omitted) (11th Cir. 2000). Congress' intent in the Welfare Reform Act was to assist Cuban–Haitian entrants in receiving benefits. The favorable provisions/exceptions of the Welfare Reform Act were designed to assist Cubans and Haitians to access federal public benefits because of harsh conditions in Cuba and Haiti. *See City of Chicago v. Shalala*, 189 F.3d 598, 609 n. 16 (7th Cir. 1999), *See also, Rodriguez by Rodriguez v. United States*, 169 F.3d 1342, 1351 (11th Cir.1999). The plain meaning of the act clearly indicates that the plaintiff's adjusted status as a lawful permanent resident under NACARA qualifies as a 'special status' pursuant to the 'Cuban/Haitian entrant' exception. Although the phrase 'special status' is not defined by the REAA or anywhere that the parties or the undersigned have discovered, the broad language of the provision indicates that the legislature intended the 'Cuban/Haitian entrant' exception to be applicable to individuals granted lawful permanent resident status under special acts such as NACARA. NACARA provides that "any alien who is a national of Nicaragua or Cuba and who has been physically present in the United States for a continuous period, beginning not later than December 1, 1995 ..." is eligible to become a permanent resident. Pub.L. 105–100 § 202(b)(1). If the legislature had intended the act to be applied more narrowly, they would not have added the provision "any other special status." The plaintiff's adjusted status under NACARA qualifies as a 'special status' pursuant to the 'Cuban/Haitian entrant' exception.

Other jurisdictions have noted that members of groups described in NACARA were granted various "special statuses."

---

**2.** In 1982, the functions of the REAA were delegated by President Reagan to the Secretary of Health and Human Services, who then created the ORR to aid refugees in resettlement. Ex. Ord. No. 12341, Jan. 21, 1982, 47 F.R. 3341.

*Pinho v. I.N.S.*, 249 F.3d at 190. This further demonstrates that NACARA does provide some form of a 'special status.' Therefore, the plaintiff's adjusted status as a lawful permanent resident under NACARA qualifies as a 'special status' pursuant to the 'Cuban/Haitian entrant' exception, making her immediately eligible to receive SSI benefits.

### RECOMMENDATION

In accordance with the foregoing, it is

**RECOMMENDED** that the decision of the Commissioner be **REVERSED**, and the plaintiff's Motion for Summary Judgment (DE # 24, 7/22/03) be **GRANTED.**

The parties have ten (10) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with United States District Judge K. Michael Moore. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993).

January 8, 2003.