**Benjamin DANIELS, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**Civil Action No. 98–0598–P–G.**

United States District Court,
S.D. Alabama,
Southern Division.

March 22, 2000.

Rose A. McPhillips, Mobile, AL, for plaintiff.

Patricia Nicole Beyer, U.S. Attorney's Office, Mobile, AL, for defendant.

*ORDER MODIFYING AND ADOPTING THE REPORT AND RECOMMEN-DATION OF THE MAGISTRATE JUDGE*

PITTMAN, Senior District Judge.

Pending before this court is plaintiff's Objection To The Recommendation of the Magistrate Judge, made under 28 U.S.C. § 636(b)(1)(B) and dated October 12, 1999 (doc. 15), with defendant's Response thereto (doc. 16). The Magistrate Judge recommends that the decision of the Commissioner to deny plaintiff social security disability benefits be affirmed (doc. 14).

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a *de novo* determination of those portions of the Report and Recommendation to which objection is made, the Report and Recommendation of the Magistrate Judge is due to be adopted as modified as the opinion of this court. The modifications are as follows:

1. At page 2, ¶ 1 line 2: The date of "the initial hearing" is corrected to reflect—March 29, 1996 (Tr. 42); and

2. at page 16, omit paragraphs 2 through 4, beginning with—"Further, the

DOT itself . . ." and ending with ". . . than the definitions in the DOT."—and insert:

■ Recently, the Eleventh Circuit explained that

the DOT "is not the sole source of admissible information concerning jobs." *Barker v. Shalala,* 40 F.3d 789, 795 (6th Cir.1994). The DOT itself states that it is not comprehensive. It provides occupational information on jobs in the national economy, and it instructs "DOT users demanding specific job requirements [to] supplement th[e] data with local information detailing jobs within their community." Dictionary of Occupational Titles, Special Notice at xiii (4th ed.1991); *Barker,* 40 F.3d at 795. Additionally, the Code of Federal Regulations states that the SSA will take administrative notice of reliable job information available from various governmental and other publications, such as the DOT. See 20 C.F.R. § 404.1566(d)(1). By this wording, the SSA itself does not consider the DOT dispositive.

*Jones v. Apfel,* 190 F.3d 1224, 1230 (11th Cir.(Sept.29) 1999) (in holding that when the VE's testimony conflicts with the DOT, the VE's testimony "trumps" the DOT). The Eleventh Circuit held that "an ALJ may rely solely on the VE's testimony," over the DOT, *Id.,* and added, that "[o]ur holding does not preclude reliance on the DOT; reliance on the DOT is within the discretion of the ALJ." *Id.* at n. 2. Thus, herein, the vocational information provided by the VE "trumps" the DOT and the ALJ's reliance upon the VE was within the ALJ's discretion.

The court also writes to plaintiff's objection to the Report and Recommendation. Plaintiff contends that "[t]he Magistrate Judge erred in determining that the Plaintiff does not have an underlying impairment which could reasonably be expected to produce the severe level of pain alleged

by Plaintiff." (doc. 15, p. 1, ¶ 2). Plaintiff argues that his treating physician Dr. Rutledge prescribed Lortab for plaintiff, a point not reconciled by the Magistrate Judge, and that the consultative examiner Dr. Hunte confirmed plaintiff's "chronic low back pain." *Id.* at p. 2.

In this Circuit, it is well established that

[i]n reviewing claims brought under the Social Security Act, [the court's] role is a limited one. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Secretary. Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence. Yet, within this narrowly circumscribed role, we do not "act as automatons." We must scrutinize the record as a whole, to determine if the decision reached is reasonable, and supported by substantial evidence.

Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.

*Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983) (internal citations omitted).

First, plaintiff argues that neither the ALJ, nor the Magistrate Judge addressed the issue of pain medication in connection with his subjective complaints of pain. However, this court finds that the ALJ fully addressed the issue of pain pursuant to *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991). (*See* Tr. 22–24). The Magistrate Judge, after a careful and thorough review of the evidence (doc. 14, p. 10–12), noted:

"The undersigned finds that upon review of the ALJ's decision, the record and the testimony, the ALJ properly applied the pain standard ..." and "[t]here is sub-

stantial evidence to support the ALJ's decision that while there is support for a medical condition which could cause mild to moderate discomfort, the Plaintiff does not have an underlying impairment which could reasonably be expected to produce the severe level of pain and the subject complaints of severity alleged by the Plaintiff[ ]" (Tr. 22, 23).

*Id.* at 12. This court agrees.

Although plaintiff's prescription medication, Lortab, was not specifically referred to by either the ALJ or the Magistrate Judge, both made reference to pain medication in connection with the possible side-effect of drowsiness (Tr. 22; doc. 14, p. 11, ¶ 2).

This court's review of the record indicates, in pertinent part, that plaintiff was prescribed Lortab on March 4, 1994, by Dr. Terry who referred plaintiff to Dr. Rutledge (Tr. 171–172). On March 24, 1994, plaintiff purchased Lortabs under a prescription issued by Dr. William Hall (Tr. 273).

Plaintiff saw Dr. Rutledge, initially, on April 7, 1994, and "was shown how to sit and how to sleep and [was] placed on an hourly exercise program"; he was prescribed no medication (Tr. 187). On April 14, 1994, plaintiff purchased Lortabs under a prescription issued by Dr. Rutledge (Tr. 272).

Approximately eight months later, on December 21, 1994, at the Franklin Memorial Primary Health Center, plaintiff was dispensed a Lortab, 2.5 mg. No prescription was given (Tr. 208). On January 10, 1995, he was given five Lortabs (Tr. 254). One month later, on February 16, 1995, plaintiff was given fifteen Lortabs, and in April, 1995, he was given fifteen more (Tr. 253). Plaintiff was not given Lortab again until August 23, 1995 (Tr. 297), and no more thereafter.

These episodic prescriptions from March 4, 1994, until August 23, 1995, serve to

support the fact, as noted by the ALJ, that plaintiff suffers "mild to moderate discomfort" (Tr. 23). However, this court finds that this evidence does not sufficiently contradict the substantial evidence of record, documented in detail by the Magistrate Judge and the ALJ, which demonstrates that plaintiff's complaints of pain, discomfort, and self-imposed physical limitations are highly exaggerated. (doc. 14, p. 11, ¶ 1–2; p. 12, ¶ 1).

Second, plaintiff argues that Dr. Hunte, the consultative examiner confirmed plaintiff's back pain. However, the Magistrate Judge fully addressed Dr. Hunte's consultative opinion. (*Id.* at 11, ¶ 3).

> Thus while [Dr. Hunte] does note severe pain, it is not a permanent diagnosis; rather, Dr. Hunte indicates that the pain could be improved by physical therapy which concurs with Dr. Rutledge's repeated statements advising intensive exercise, activity and return to light work. However, the ALJ noted that the Plaintiff testified that he did not exercise as he should (Tr. 24).

*Id.* at 12. The Magistrate Judge further noted thereafter that the Functional Capacity Evaluation indicated, *inter alia*, that plaintiff "demonstrated inappropriate pain behavior" with "[e]xaggerated response to forward bending with inconsistent jerky movement patterns rather than the expected slow guarded" type and "[m]oaning, groaning, and frequent verbal complaints." (*Id.* at 12, ¶ 1; Tr. 242). This court's review of the record indicates that Magistrate Judge's analysis is thorough and his findings based on substantial evidence, i.e., "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* 703 F.2d at 1239.

Accordingly, with the modifications noted, and after due and proper consideration of all pleadings in this file, and a *de novo* determination of those portions of the Re-

port and Recommendation to which objection is made, it is ORDERED that the Report and Recommendation of the Magistrate Judge is hereby ADOPTED, as MODIFIED above, as the opinion of this court, that the decision of the Commissioner to deny benefits be AFFIRMED, and that this action be DISMISSED.

## REPORT AND RECOMMENDATION

GAME, United States Magistrate Judge.

The Plaintiff brings this action under 42 U.S.C. § 405(g) and §§ 401–403 seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits.

This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be affirmed.

### I. *Issues on appeal*

The Plaintiff presents the following issues on appeal:

A. The ALJ's finding that the Plaintiff could perform "a limited range of sedentary work" renders him "disabled" under Section 201.00(h).

B. The Plaintiff's impairments, which support a finding of a residual functional capacity of "less than sedentary work," preclude any substantial gainful activity.

C. The hypothetical and the response by the vocational expert on which the ALJ relied are both flawed.

### II. *Background facts*

Plaintiff was born on May 11, 1947 (Tr. 93), and was 49 years old at the time of the administrative hearing decision (Tr. 47).

He has completed the eighth grade (Tr. 48) and has past relevant work experience as a welder, a lift truck operator, a material handler, an ice puller, a tractor operator, and a construction laborer (Tr. 55–58, 301). His most recent work was driving a forklift and manually stacking tractor trailer and combine tires inside trailers for delivery to recycling plants (Tr. 55–56, 126). He alleged he became disabled as of November 10, 1993 (Tr. 93), due to back pain and left leg pain caused by herniated lumbar intervertebral discs at L4–5 and L5–S1 (Tr. 61–63, 193) and rectal bleeding (Tr. 59–61, 197–198).

After review of the written evidence and testimony of the Plaintiff and a Vocational Expert at the initial hearing on March 19, 1996 and the supplemental hearing on July 30, 1996 (Tr. 42–73, 74–91), the ALJ reached a decision on September 16, 1996 finding that the Plaintiff had severe impairments of degenerative disc disease and internal hemorrhoids, but he did not have an impairment or combination of impairments listed in or medically equivalent to one listed in the regulations (Tr. 27, Finding 2). The ALJ also found Plaintiff's subjective allegations not credible to the extent they would prevent him from performing work (Tr. 27, Finding 4).

The ALJ found Plaintiff was not capable of performing his Past relevant work due to his limitations, but concluded he retained the Residual functional capacity to perform a limited range of sedentary work and found, enlisting the testimony of a VE, Plaintiff was capable of performing other jobs in the national economy (Tr. 27, Finding 6). Accordingly, Plaintiff was not disabled as defined in the Social Security Act (Act) (Tr. 28).

On May 12, 1998, the Appeals Council denied review and the decision of the ALJ became the final decision of the Commissioner of Social Security (Tr. 6–8).

### III. *ALJ Findings*

The ALJ made the following findings (Tr. 27–28):

(1) Plaintiff met the disability insured status requirements through June 30, 1999, and has not engaged in substantial activity since the alleged disability onset date;

(2) the medical evidence establishes Plaintiff has severe degenerative disc disease and internal hemorrhoids, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4;

(3) Plaintiff has the Residual functional capacity to perform the physical exertional and nonexertional requirements of at least a limited range of sedentary work including the ability to lift and carry up to 25 pounds occasionally and 10 pounds frequently, to sit for a total of at least six hours in an eight-hour day, and to stand and walk for a total of approximately three to four hours in an eight-hour day. Plaintiff's ability to reach is limited to simple reaching as defined in the body of the hearing decision. Plaintiff had the additional non-exertional limitations of working with mild to moderate pain and drowsiness due to medication and would need to be afforded the opportunity to work near restroom facilities and to take short unscheduled breaks;

(4) Plaintiff's subjective complaints are not credible to the extent they would prevent him from performing such work;

(5) Plaintiff is unable to return to his past relevant work and therefore, the burden of proof shifts to the Commissioner to show that there are jobs Plaintiff could perform considering his age, education, work experience, and Residual functional capacity;

(6) the burden of proof has been met in this case by the testimony of the VE that substantial numbers of jobs exist which Plaintiff could perform under the frame-

work of Rules 201.18 and 202.19 [1] of Appendix 2, Subpart P, Regulations No. 4;

(7) Plaintiff has not been disabled at any time through the Commissioner's decision.

## IV. *Standard of Review*

■ In Social Security cases, the Plaintiff has the burden of proving inability to perform previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the Plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. *Id.* at 1005. Once the Plaintiff meets this burden, as here, it becomes the Commissioner's burden to prove that the Plaintiff is capable, given age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985).

This Court does not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the [Commissioner of Social Security]. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). Instead, this Court "must scrutinize the record as a whole, ... to determine if the decision reached is reasonable, ... and supported by substantial evidence." *Id.*

Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commission-

er's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986). Further, it has been held that the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir.1991). This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

In this particular case, the ALJ applied the facts to the sequential evaluation process set forth at 20 C.F.R. §§ 404.1520, 416.920. First, he found Claimant did meet the insured status requirements of the Act. He then determined Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability (Tr. 27). After review of the written evidence and testimony from the original and supplemental hearings, the ALJ found Plaintiff had severe impairments of degenerative disc disease and internal hemorrhoids (Tr. 27, Finding 2). The ALJ also found Plaintiff's statements concerning his impairments and their impact on his ability to work were not credible (Tr. 27, Finding 4).

The ALJ found Plaintiff was not capable of performing his Past relevant work (Tr. 27, Finding 5). The burden then shifted to the Commissioner to show there is other substantial gainful employment available that the claimant is capable of performing. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). The ALJ concluded he retained the Residual functional capacity to perform a limited range of sedentary work activity and, with the assistance of the testimony of a VE, found Plaintiff was capable of performing other jobs in the national economy (Tr. 27, Finding 6). Accordingly, Plaintiff was not disabled as de-

---

1. This appears to be a typographical error which should read Rule 201.19. Rule 202.19 refers to a person with a residual functional capacity for light work.

fined in the Act (Tr. 28, Finding 7). Once the ALJ made this determination, the burden shifted back to Plaintiff to prove his inability to perform the alternative work. *Hale v. Bowen*, 831 F.2d at 1011. Plaintiff failed to sustain this burden.

## V. *Discussion*

A. The ALJ's finding that the Plaintiff could perform "a limited range of sedentary work" renders him "disabled" under Section 201.00(h).

Plaintiff asserts that the ALJ should have considered the effect of Section 201.00(h) of the Medical–Vocational Guidelines, 20 C.F.R.Pt. 404, Subpt. P, App. 2, (the Guidelines) and found him disabled because he is limited to less than a full range of sedentary work, has no transferable skills, limited education and was 49 years of age.

Section 201.00(h) sets forth, in pertinent part, as follows:

> 201.00(h) The term "younger individual" is used to denote an individual age 18 through 49. For those within this group who are age 45–49, age is a less positive factor than for those who are age 18–44. Accordingly, for such individuals; (1) who are restricted to sedentary work, (2) who are unskilled or have no transferable skills, (3) who have no relevant past work or who can no longer perform vocationally relevant past work, and (4) who are either illiterate or unable to communicate in the English language, a finding of disabled is warranted.

20 C.F.R.Pt 404, Subpt, P, App. 2, Regulations No. 4, Section 201.00(h).

Upon review of the elements of Section 201.00(h), the record and the testimony of the VE, the undersigned finds that there is substantial evidence that while the Plaintiff is limited to less than a full range of sedentary work, a finding of

disabled under this Rule was not warranted because the VE identified work which the Plaintiff could perform which exists in significant number in the national economy. Also, the Plaintiff is not illiterate or unable to communicate in the English language (Tr. 48, 42–73, 74–91).

Plaintiff also argues that the ALJ mechanically applied the age requirement of Rules 201.18 and 201.19, of the Guidelines in finding the Plaintiff not disabled. In regard to the application of the age factor of the grid, *Titles II and XVI: Determining Capability to Do Other Work—the Medical–Vocational Rules of Appendix 2*, Social Security Ruling 83–10, provides as follows:

Vocational Factors: An Individual's Age, Education, and Work Experience

1. Age. The regulations provide that older age is an increasingly adverse vocational factor for persons with severe impairments. The chronological ages 45, 50, 55 and 60 may be critical to a decision. However, the regulations also provide that age categories are not applied mechanically in borderline situations. For example, a rule for an individual of advanced age (55 or older) could be found applicable, in some circumstances, to an individual whose chronological age is 54 years and 11 months (closely approaching advanced age). No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach.

In *Powell v. Heckler*, 736 F.2d 633 (11th Cir.1984), the Court found that when the ALJ has "considered the individualized testimony of the vocational expert, who testified that there were jobs available to claimant, taking into consideration all relevant factors" including the Plaintiff's age, the ALJ's statement that the grids [Guidelines] rendered a finding of non-disabled, was "simply unnecessary" and was "not

grounds for remand" (citations omitted) 736 F.2d at 635.

In this decision the ALJ stated that, "If the claimant were able to perform all of the requirements of sedentary work, Rules 201.18 and 201.19 of the Medical–Vocational Guidelines would direct a conclusion of 'not disabled.' However, because the claimant's residual functional capacity contains non-exertional limitations as listed above, the Medical–Vocational Guidelines cannot be used to direct a conclusion" (Tr. 26).

At the supplemental hearing the ALJ stated in his opening remarks, "You are now 49 years old" (Tr. 78). He asked the VE "Are you familiar with our regulations and how they apply the skill and exertional requirements of work and age and education and vocational factors" to which the VE responded, "I am" (Tr. 82). In his hypothetical question, the ALJ began with, "I want you to assume that we have a 49 year old individual with an eighth grade education in the vocational profile submitted by Dr. Hunt" (Tr. 85). The ALJ asked the VE at the initial hearing "Are you familiar with our regulations and how they apply to the skill and exertional requirements of work and age and education as vocational factors," to which the VE responded, "Yes" (Tr. 66–67). In his hypothetical question, the ALJ began by asking the VE to assume "a 48 year old individual" (Tr. 69).

From review of his decision and the testimony it appears that the ALJ properly used the Guidelines as a "framework" and his decision is supported by VE testimony.

B. The Plaintiff's impairments, which support a finding of a residual functional capacity of "less than sedentary work," preclude any substantial gainful activity.

The Act places the burden of establishing disability on the claimant. *Ware v.*

*Schweiker,* 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). Plaintiff alleges he has been disabled since November 10, 1993 (Tr. 93). The record, does not support this contention.

Based on the medical evidence of record, the ALJ found Plaintiff has severe impairments of degenerative disc disease and internal hemorrhoids (Tr. 21). The ALJ determined that despite these impairments, Plaintiff has the residual functional capacity to perform a limited range of sedentary work:

[I] find that the claimant has the ability to lift up to 25 pounds occasionally and up to 10 pounds frequently, to sit for a total of at least six hours in an eight-hour day, to stand and walk for a total of three to four hours in an eight-hour day. I find that, while the claimant has demonstrated the ability to do "simple reaching," he does not have the ability to engage in "extended reaching." I also find that he has the additional non-exertional limitation of working with mild to moderate pain and/or mild to moderate drowsiness caused by pain medications and their effects on his ability to concentrate. In addition, the claimant would need to be afforded the opportunity to work near restroom facilities and to take short unscheduled restroom breaks due to his rectal bleeding problems.

(Tr. 25, 27 Finding no. 3).

The ALJ stated that medical records submitted by Charles D. Terry, M.D., covering the period December 15, 1993, through March 31, 1994, reveal Plaintiff injured his back at work approximately two months prior to his first visit to Dr. Terry (Tr. 21, 172, 170–173). The ALJ noted Plaintiff was treated conservatively, and initially, his condition appeared to be improving (Tr. 21, 172). The ALJ noted, however, as of March 1994, Plaintiff had

re-injured his back, was still complaining of back pain, and was unable to return to his job (Tr. 21, 171–172).

The ALJ further noted that at this point, Plaintiff was referred to an orthopedist, Guy L. Rutledge Jr., M.D.[2], who treated him from April 7, 1994 through June 22, 1995 (Tr. 21, 171, 249–273). Dr. Rutledge initially diagnosed Plaintiff's condition as acute lumbosacral sprain (Tr. 21, 187). On May 6, 1994, a CT scan of Plaintiff's lumbar spine revealed broad base bulging of the disc degenerative changes at L–4/5 with a moderate degree of spinal stenosis and a broad base disc bulge with central herniation at L–5/S–1, asymetric to the left and "creating some compression and distortion of the thecal sac centrally and to the left" (Tr. 21, 268). The ALJ noted that Dr. Rutledge suggested Plaintiff should follow a routine of back exercises and shortly return to a lighter duty type work, and that Plaintiff continued to complain of pain and the inability to work (Tr. 21, 264–267). On September 20, 1994, magnetic resonance imaging (MRI) of the lumbar spine, an Electromyography Study (EMG), and a Nerve Conduction Velocity Test (NCV) of both lower extremities were done (Tr. 21, 259, 260, 261–262). The EMG and NCV were normal (Tr. 21, 263) and the MRI showed a posterior disc herniation at L5–S1 which effaces the nerve root on the left but does not affect the thecal sac and a bulging disc with mild spondylolisthesis at L4–5, causing mild secondary spinal stenosis (Tr. 21, 259). The ALJ observed that Dr. Rutledge continued to recommend exercise and return to light duty while Plaintiff continued to complain of intense pain and inability to exercise or return to work (Tr. 21, 249, 250, 253, 254, 255, 257, 258).

On October 25, 1994, James R. Curtiss, M.D., a gastroenterologist evaluated Plaintiff (Tr. 21, 197–198). Plaintiff complained of rectal bleeding of several months duration (Tr. 21, 197). Dr. Curtiss noted Plaintiff remained active and was not incapacitated by this problem (Tr. 197). Dr. Curtiss recommended a colonoscopy (Tr. 21, 198). This procedure was done on November 2, 1994, and internal hemorrhoids, an anal fissure and a colon polyp were detected (Tr. 21, 235). The polyp was surgically removed (Tr. 21, 235). It was recommended that Plaintiff use stool softeners and Anusol suppositories as needed (Tr. 235). The ALJ stated Plaintiff "has continued to complain of rectal bleeding, and recent medical evidence submitted from Franklin Memorial Primary Health Center indicate the claimant is still complaining of rectal bleeding" (Tr. 21, 320). On July 8, 1996, the Plaintiff was again instructed to use Anusol and stool softeners (Tr. 320).

Plaintiff underwent physical consultative examinations by Robert A. McKnight, M.D., on August 10, 1994, Gregory K. Parker, M.D., on December 18, 1995, and Eyston A. Hunte, M.D., on April 22, 1996 (Tr. 23, 190–191, 281–283, 303–307). The ALJ stated Dr. McKnight found no neurological abnormalities, but Plaintiff complained of back pain that radiated down his right leg (Tr. 21, 190–191). Plaintiff would not do a heel-squat because of back pain (Tr. 191). Plaintiff was unable to walk on his toes and heels, and was unable to do a toe-to-heel walk secondary to discomfort and trying to walk on one leg (Tr. 191).

The ALJ noted that when Dr. Parker examined Plaintiff, he continued to complain of severe back pain but denied any radiation of pain down his legs (Tr. 23, 281). Plaintiff advised Dr. Parker that he had to walk with the assistance of a cane (Tr. 23, 281). Dr. Parker, however, found

---

2. The undersigned notes that Dr. Rutledge was the Plaintiff's treating physician for over one year and as such, his opinion would normally be afforded preferential status. However, Plaintiff specifically requested that another orthopedic examination or at least another consultative examination be obtained for Plaintiff's records (Tr. 44–46). Plaintiff was then consultatively referred to Dr. Eyston A. Hunte for evaluation (Tr. 76).

Plaintiff could walk without a cane, but when he did so, it was at a very slow pace (Tr. 23, 282). The ALJ noted that based on his examination of Plaintiff, Dr. Parker diagnosed chronic back pain, probable degenerative disc disease, severely deconditioned lumbar musculature with impaired flexibility of the back, and found no clinical evidence for severe nerve root compression (Tr. 23, 283).

The ALJ observed that, upon examination, Dr. Hunte determined Plaintiff suffered from chronic low back pain with right side radiculopathy and slight right leg weakness, and a history of degenerative disc disease (Tr. 23, 307). The ALJ stated that Dr. Hunte noted Plaintiff had a history of hypertension, but the medical evidence in the file shows there is no end-organ damage and Plaintiff's hypertension is well controlled by medication (Tr. 23, 211, 220, 307).

The ALJ also considered the physical capacities evaluations completed by Dr. Parker and Dr. Hunte (Tr. 24, 285, 308). The ALJ found Dr. Parker's determinations inconsistent as to the duration of Plaintiff's sitting, standing, and walking abilities during an entire eight hour work day and for any one period (Tr. 24, 285). The ALJ also found that Dr. Parker's determination that Plaintiff is able to occasionally lift up to 50 pounds and occasionally carry up to 100 pounds to be an overestimate of Plaintiff's abilities based on the medical evidence of record in combination with his moderate amount of pain (Tr. 24, 285).

With respect to the physical capacities evaluation by Dr. Hunte, the ALJ stated as follows:

> I find that the Physical Capacities Evaluation (PCE) completed by [sic] Dr. Hunte most closely reflects a true picture of the claimant's abilities based on the medical evidence of record. However, there is a discrepancy in the narra-

tive describing Dr. Hunte's examination of the claimant and the PCE Dr. Hunte completed as regards the claimant's ability to "reach." In his narrative description, Dr. Hunte states that the claimant should be able to use his hands for pushing and pulling of arm controls, that he should be able to drive a car sparingly, but that he may have difficulty reaching because of the severity of the pain in his lower back [Tr. 307]. Yet, on the PCE, Dr. Hunte states that the claimant is not able to reach at all [Tr. 308]. If one were to take the limitation of no reaching on the PCE literally, there would be no way that the claimant would be able to use his hands and arms to drive, to push and pull arm controls repetitively as Dr. Hunte has indicated he can, to take care of his personal hygiene needs, to use a cane as his lawyer stated he must do at times, or to move around as I have observed him doing at the hearing. Therefore, I find that the claimant is able to do "simple reaching"—using his hands and arms to reach and retrieve items within an arm's length of his immediate body area—frequently, but he is unable to do "extended reaching"—using his hands and arms to reach beyond his immediate body area or beyond an arm's length in any direction to access or retrieve articles.

(Tr. 24–25) (insertions in brackets added).

Review of Dr. Hunte's examination indicates he found the Plaintiff's range of motion in his dorsolumbar spine as restricted by 10% in flexion and extension, no spasms, some tenderness over the lumbar spine, straight leg raises left at 70%, right at 60% and his neurologicals grossly intact. He noted no assistive device. Dr. Hunte found no limitation of range of motion in the Plaintiff's cervical spine, shoulders, arms or hands, no spasm, and no tenderness (Tr. 304–306). The ALJ properly resolved the conflict between Dr. Hunte's Physical Capacities Evaluation and his

narrative statements. The resolution of any conflict in the evidence is a function solely within the province of the Commissioner. *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971). This Circuit recognizes that even a treating physician's opinion may be rejected where the doctor's opinion is inconsistent with his own medical records. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997). Furthermore, the Commissioner may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ has wide latitude as finder of fact to evaluate the weight of the evidence. *Owens v. Heckler,* 748 F.2d 1511, 1514 (11th Cir.1984). Ultimately, the responsibility for deciding Residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546. Further, as stated herein, the task of this Court is not to reweigh the evidence but instead to determine if there is substantial evidence to support the decision of the ALJ.

The ALJ has properly considered Plaintiff's subjective complaints of pain, side effects of medication and his need for frequent unscheduled bathroom breaks (Tr. 22, 25). If the ALJ decides not to credit a claimant's testimony as to pain, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater,* 67 F.3d 1553, 1561–1562 (11th Cir.1995). Further, the Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler,* 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc,* 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen,* 793 F.2d 275 (11th Cir.1986).

In regard to the Plaintiff's allegations of pain and side effects of his medication, the ALJ stated Plaintiff had submitted no medical evidence that supported his alleged need to lie down each day due to back pain or to restrict his daily activities as he had done (Tr. 23). The ALJ found, "it would appear that these restrictions are based on self-imposed limitations rather than on medical advice." (Tr. 23). The ALJ stated, "in fact, Dr. Rutledge has advised the claimant to become involved in an intensive exercise program, discontinue the use of a cane, and return to light duty work." (Tr. 23, 249, 250, 255, 264, 266, 267). The ALJ further stated, "Dr. Rutledge was of the opinion that the claimant's allegations of severe pain are greatly exaggerated." (Tr. 23, 249, 250, 251).

From review of the record, it appears that the ALJ considered the clinical evidence in the record (Tr. 21, 23) including radiculopathy, MRI of the lumbar spine, CT of the lumbar spine, an EMG Study and NCV Test (Tr. 21, 23). Dr. Rutledge prescribed pain medication, however, he indicated Plaintiff's intensity of pain was "exaggerated-mild," that Plaintiff had "minimal findings-severe symptoms," (Tr. 251–252) and indicated on June 8, 1995 that "I feel that the patient does not have anything of major degree, but we cannot get him to work" and that "I don't find very much wrong with him. I feel like he ought to be back in the work force. I think he exaggerates his symptomatology. He certainly does on direct examination." (Tr. 249). On June 22, 1995, Dr. Rutledge stated, "my feeling is that this patient can do work, that he ought to be in the work force that he could do certainly light duty at this time and that he is employable." (Tr. 249).

The Plaintiff has asserted that Dr. Hunte found "obvious severe pain" (Plaintiff's Statement of Issues at 5). He noted that the Plaintiff "complains of severe pain in the lower back on manipulation of the hips" and that he had "tenderness over the lower lumbar spine" (Tr. 306). Dr. Hunte

found that, "It is obvious, that Mr. Daniels has severe back pain, but may get some improvement from intensive physical therapy" (Tr. 307). Thus while he does note severe pain, it is not a permanent diagnosis; rather, Dr. Hunte indicates that the pain could be improved by physical therapy which concurs with Dr. Rutledge's repeated statements advising intensive exercise, activity and return to light work. However, the ALJ noted that the Plaintiff testified that he did not exercise as he should (Tr. 24).

Further, the undersigned notes that the Plaintiff has not been placed in any pain management program nor are there any physical therapy records to indicate that he has had an unsuccessful attempt to rehabilitate his lumbar spine. A functional capacity evaluation was performed by Leigh C. Allen, P.T., Industrial Rehabilitation. She recommended a 4–6 week reconditioning to improve his back to the best functional level and coordination with Vocational Evaluation to determine "other possible vocational routes" since return to heavy work was unlikely (Tr. 243). Ms. Allen also noted his effort was "questionable at times" and his return to work potential was "poor" (Tr. 237). However, she also stated that he "demonstrated cooperative behavior" and that test results were consistent over the two day testing period (Tr. 242). In regard to his pain behavior, she noted that he "demonstrated inappropriate pain behavior during the testing procedure as follows: 1) Exaggerated response to forward bending with inconsistent quick jerky movement patterns rather than the expected slow guarded movement pattern; 2) Moaning, groaning and frequent verbal complaints" (Tr. 242).

■ The undersigned finds that upon review of the ALJ's decision, the record and the testimony, the ALJ properly applied the pain standard pursuant to *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.

1991), 20 C.F.R. 404.1529 and Social Security Ruling 88–13, *Titles II and XVI: Evaluation of Pain and Other Symptoms,* as set forth in his decision. There is substantial medical evidence to support the ALJ's decision that while there is support for a medical condition which could cause mild to moderate discomfort, the Plaintiff does not have an underlying impairment which could reasonably be expected to produce the severe level of pain and the subjective complaints of severity alleged by the Plaintiff's (Tr. 22, 23).

Plaintiff asserts that the side effect of his pain medication, drowsiness, is not just a mild or moderate limitation, but instead significantly limits his ability to perform the full range of sedentary work and precludes substantial gainful activity (Plaintiff's Statement of Issues at 5–6). The ALJ noted that Plaintiff testified that he must nap about one and one half hours each day because his pain medication causes drowsiness (Tr. 22). Plaintiff also asserts that his need to take short unscheduled bathroom breaks cannot be accommodated by scheduled breaks described in Social Security Ruling 96–9p, *Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work* cited by the Plaintiff (Plaintiff's Statement of Issues at 3).

■ In regard to the side effects of his medication, the ALJ found that after weighing the medical evidence the "side effects caused by the claimant's medication are no more than moderate and do not effect his ability to sustain non-complex entry-level work" (Tr. 25). The Plaintiff has argued that the *Physician's Desk Reference* lists sedation as a side effect and that the drowsiness to which he testified is consistent with sedation. However, the Plaintiff has not offered argument in regard to whether the ALJ improperly evaluated the frequency, persistence or other

limiting affects of his drowsiness, or whether the ALJ improperly analyzed the underlying medical condition causing the need for the medication. There are no medical records to support the need for a one and one half hour nap each day. The undersigned notes that there are no complaints to his treating physician or any examining physician that the medication was causing drowsiness to the point alleged. Also, there is no medical record of any adjustment to or change in his medication to limit or reduce the drowsiness. The undersigned finds that the ALJ properly determined that the Plaintiff's side effect of drowsiness had only a mild to moderate limitation (Tr. 25).

The ALJ noted, "although the claimant has alleged that he has been experiencing increasing problems with rectal bleeding, he has submitted no medical evidence to indicate that this is the case or that he is experiencing these problems [sic] to such an extent that he would be unable to engage in work activity" (Tr. 22). The ALJ noted, "the only evidence submitted concerning bleeding problems since his colonoscopy, is a July 1996 treatment note from Franklin Memorial Primary Health Center at which time he alleged increased problems over the past month" and that "tests taken at that time showed no blood in the claimant's stool (Exhibit 44)." (Tr. 22–23, 320).

The undersigned observes that with the limitations as found by the ALJ, mild to moderate drowsiness caused by pain medication and the need to take short unscheduled restroom breaks due to his rectal bleeding problems, the VE testified Plaintiff is still able to perform other work in the national economy. The undersigned finds, that the above evidence constitutes sufficiently articulated reasons for rejecting Plaintiff's subjective testimony to the extent that his non-exertional limitations restrict him to less than a full range of sedentary work and that there is substan-

tial evidence to support the ALJ's rejection.

Based upon the foregoing, the undersigned finds that the ALJ properly determined the exertional and non-exertional abilities of the Plaintiff in determining his residual functional capacity. The undersigned finds no error in the application of the law in his resolution of the conflicting evidence in regard to the Plaintiff's ability to reach and that substantial evidence supports the ALJ's decision that regard.

C. The hypothetical and the response by the vocational expert on which the ALJ relied are both flawed.

Upon determining that Plaintiff has the residual functional capacity to perform a limited range of sedentary work, as discussed herein, the ALJ next considered whether Plaintiff could return to his past relevant work. The VE classified the Plaintiff's past relevant work at exertional levels greater than that retained by the Plaintiff (Tr. 26, 67–68, 83–84). Therefore, the ALJ properly found that the Plaintiff could not return to his past relevant work (Tr. 26).

When a disability claimant establishes inability to perform past relevant work, the burden of proof shifts to the Commissioner of Social Security to prove that the Plaintiff is capable, considering his age, education and past relevant work, of engaging in other kinds of substantial gainful activity. *Cannon v. Bowen,* 858 F.2d 1541, 1544 (11th Cir.1988). To meet this burden, the ALJ must articulate specific jobs that the Plaintiff is capable of performing, *Allen v. Sullivan,* 880 F.2d 1200, 1201 (11th Cir.1989), and the jobs identified must be available in significant numbers in the national economy not just the geographic area where the Plaintiff resided. *Allen v. Bowen,* 816 F.2d 600, 603 (11th Cir.1987). Work exists in the national economy when it exists in significant numbers either in the region where the claim-

ant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a); *See* 42 U.S.C. § 423(d)(2)(A).

Based on VE testimony, and also considering rules 201.18 and 201.19 of the guidelines as a framework, the ALJ found Plaintiff can perform other work in the national economy and is therefore not disabled (Tr. 26, 27 Finding no. 6). 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, rules 201.18, 201.19. The ALJ consequently found Plaintiff is not entitled to a period of disability or disability insurance benefits (Tr. 28). 20 C.F.R. § 404.1520(f).

The VE testified, given a hypothetical individual of Plaintiff's age, education, work experience and residual functional capacity, that such an individual would be capable of performing a significant number of jobs such as administrative support personnel and cost and rate clerks (Tr. 26, 84–88). The ALJ noted the VE stated there are approximately 69 of these type jobs in the Baldwin County/Mobile area, 650 in the State of Alabama, and 65,000 in the national economy (Tr. 26, 87–88). Accordingly, the ALJ found the examples cited by the VE represent a significant number of jobs which Plaintiff is capable of performing (Tr. 26).

Plaintiff contends the jobs identified by the VE do not constitute a significant number of jobs in the national economy (Plaintiff's Statement of Issues at 6). Plaintiff asserts that unskilled sedentary jobs constitute a significantly restricted range of work and cites to statistics establishing that the number of jobs determined by the ALJ as a significant number are statistically insignificant. However, the inquiry is not whether the number is statistically significant in relation to jobs available. The inquiry is whether or not jobs exists in a significant number that the Plaintiff can perform. 20 CFR § 404.1566 describes the consideration in terms of numbers and not percentage, as follows:

(a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether—

(1) Work exists in the immediate area in which you live;

(2) A specific job vacancy exists for you; or

(3) You would be hired if you applied for work.

(b) How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.

The undersigned finds that the record shows the ALJ properly considered the testimony of the VE and found Plaintiff capable of performing work which exists in significant numbers in the national economy and that substantial evidence supports the ALJ's decision. Again, substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

■ Plaintiff also cites to the *Dictionary of Occupation Titles* (DOT) classifications for cost clerk and rate clerk in support of the assertion that he cannot perform these jobs, and further asserts that based on the DOT definition of reaching he can perform no jobs (Plaintiff's Statement of Issues at 7). Social Security regulations do not require the Commissioner to rely on classifications in the DOT. The regulations simply provide the Commissioner will take administrative notice of reliable job information available

from various publications, including the DOT. 20 C.F.R. § 404.1566(d).

Further, the DOT itself contains a disclaimer, noting it provides only "composite descriptions of occupations as they may typically occur." *Barker v. Shalala,* 40 F.3d 789, 795 (6th Cir.1994) (quoting DOT). The DOT states that the job descriptions and other information found therein "reflects jobs as they have been found to occur, but they may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community." DOT at xiii (4th ed.1991).

Further, the Social Security Regulations do not dictate that the Commissioner base its decision upon classifications in the DOT, rather that the DOT is simply one authoritative published source recognized among others, including vocational expert testimony, upon which the ALJ can rely. *Johnson v. Shalala,* 60 F.3d 1428, 1435–36 (9th Cir.1995).

This Court is aware of the conflicting decisions of other circuits as to whether the DOT is the controlling factor in determining whether work exists in significant numbers which the Plaintiff can perform. However, the Court does not accept that a single source of occupational information should control in all cases and will continue to view each case on its own specific fact situation. The Court finds that the information provided by the VE is more relevant to this particular fact situation than the definitions in the DOT.

Plaintiff argues that when the definition of "reach" from the DOT was presented to the VE as part of the hypothetical question, the VE answered that no work would be available. Plaintiff then argues that the ALJ cannot reject VE testimony without contrary evidence. *Lamb v. Bowen,*

847 F.2d 698 (11th Cir.1988). The undersigned does not recognize the DOT as the sole source of substantial vocational evidence and that the definition of reach contained therein does not control. Further, the undersigned finds that the definition of reaching as it applies to this individual plaintiff as found in the decision of the ALJ which is based upon his review of the medical records, analysis of the Physical Capacities Evaluation prepared by Dr. Hunte and the Plaintiff's testimony, is supported by substantial evidence and, therefore, constitutes contrary evidence sufficient for the ALJ to reject the answer to this hypothetical question. If an element of a hypothetical question is not supported by substantial evidence the ALJ may reject it. *Graham v. Bowen,* 790 F.2d 1572, 1572 (11th Cir.1986).

Upon review of the record, the hypothetical questions presented to the VE and his responses, and the residual functional capacity determined for this Plaintiff, the undersigned finds that the ALJ properly found that significant numbers of jobs exist in the economy which this Plaintiff can perform.

## VI. *Conclusion*

For the reasons set forth, and upon consideration of the oral argument, the administrative record, the hearing decision, and the memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security be affirmed.

The attached sheet contains important information regarding objections to this *report and recommendation.*

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. *Objection.* Any party who objects to this recommendation or anything in it

must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable where proceedings tape recorded).*** Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.